The next case this morning is 20-1118, Vette v. Sanders. Counsel, we're ready to hear you. Good morning, and may it please the court, my name is Eden Rowland, appearing on behalf of the appellant, Sgt. Keith Sanders. I would like to reserve three minutes of my time for rebuttal. This appeal is about the district court's wrong application of the wrong legal standard on summary judgment when qualified immunity is at issue. The district court got it wrong by wrongly allowing Mr. Vette's unsubstantiated prisoner complaint allegations to be further evidence to defeat Sgt. Sanders' qualified immunity. Counsel, let me break in and ask you a quick question here. If we accept the idea that the plaintiff's verified complaint and summary judgment, well, let's just leave it at the verified complaint, the verified complaint was properly considered by the district court, what do you have left? Your Honor, the verified complaint, even if it was considered, the plaintiff was required to go beyond his pleading, and he did not do that. Well, we do have authority in this circuit that says we can consider a verified complaint on summary judgment. Your Honor, that authority also requires that the plaintiff go beyond the pleadings and substantiate his allegations by pointing to specific and admissible evidence in the record, which this plaintiff did not do. Well, actually, I think you're not really answering Judge Carson's question because in this circuit, we treat a verified complaint as if it were a declaration, and the declaration is considered evidence that goes beyond the bare allegations of the complaint. So, repeating his question, if we think the district court properly considered the allegations of the verified complaint as evidence, meaning testimony from the plaintiff, then what do you have left? Your Honor, what we have left is that the allegations, those statements in the verified complaint are unsubstantiated. So, that goes to wait. So, what we have is a declaration that says, I was in custody, no threat to anyone, the officer came up, turned the dog loose on me, and it bit me, and the officer punched me and hit me with a chain. And then we have on the other side, various testimony saying that those things didn't happen. So, that's a fact question for the jury, isn't it? I mean, you want to argue about the wait. Maybe he's not believable. Maybe your parade of witnesses will bury him in a trial, but at this stage, we don't get to weigh the credibility of the witnesses. Your Honor, what the district court did, and what your question kind of conjectures here, is skipping the first part of the summary judgment burden analysis. There's a step one, which is on the plaintiff, and a step two. The district court jumped right to step two, to the wait. What step one should entail is requiring the plaintiff to point to admissible evidence in the record that is grounded in the record, and also responds to the particularized facts developed by the defendant. Well, he was there. He was present. It happened to him. They busted me. They got me into custody. I was just sitting there. I wasn't a threat to anyone, and then all of a sudden, this officer comes up, and he turned the dog loose on me, and the dog bit me, and then the officer hit me, and the officer then hit me with a chain. I mean, then it's your turn, right, to dispute that. Your Honor, if we adopt this framework that you just proposed, it would eviscerate qualified immunity in cases like this. If a plaintiff can overcome qualified immunity simply by having allegations in a verified complaint with nothing further in the record, then qualified immunity doesn't stand for anything. But this circuit's case law is clear, and it's well established that the question of whether these are legal questions and that a plaintiff is required to go beyond the record and demonstrate. He can't go beyond the record. You're saying he's got to go beyond the complaint. Excuse me. Go beyond the complaint. Yes. So let's explore this a little more. I guess, tell me your best case for saying that if the plaintiff lays out exactly what happens, and I think you have to concede that this is basically considered as a declaration. Do you agree with that? Do you concede that his verified complaint under our law is considered to be the same as an affidavit or a declaration given under oath? Yes, Your Honor. In substance, it is. There is a declaration statement on this form. Okay. So, I mean, if he says it under oath at summary judgment, I mean, what else does he have to do? I mean, does he have to bring in another witness to corroborate what he said? Your Honor, there are lots of things that Mr. Vett could do or might be able to do. You asked about the best case, and I would point you to Jordan V Federal Bureau of Prisons 191 Federal Appendix 639, and that is cited in the brief. You know, Mr. Vett could take the allegations in his complaint and put it on another form labeled affidavit at the top and notarized at the bottom, but it still wouldn't get to responding to the particularized consistent and credible evidence demonstrated by Sergeant Sanders in this case. And then I also want to point out that the verified complaint form on which Mr. Vett's allegations are stated is the 1983 prisoner complaint form provided in the U.S. District Court for the District of Colorado that under local rule, every pro se prisoner is required to sign and file. But not every pro se prisoner declares under oath facts that would support a claim. But in this instance, he did. He said, after I was subdued, they released the dog on me and hit me in the face with a chain and punched me. And Jordan V Federal Bureau of Prisons, by the way, says, I quote, a verified complaint stating facts admissible in trial and based on personal knowledge has the same force and effect as an affidavit for the purposes of responding in a motion for summary judgment. So I'm not seeing how that's very helpful to you and it's unpublished. But anyway, you can the fact that they use a form that gives him help by verifying his complaint so that it can be treated by declaration doesn't change the fact that it is in fact treated as if it were a declaration. So what we have is admissible evidence. His sworn declaration saying these things happen to me. Why isn't that enough? Your Honor, I would just have to come back to the very high burden that a plaintiff is required by law to overcome in order to defeat qualified immunity. The plaintiff bears this burden, not the defendant. And so is it fair to say that you're asking us to review the district court's factual determination? No, Your Honor. I am actually asking. Why isn't that precisely what you're asking us to do? Your Honor, I'm asking you to review how the district court reviewed the facts presented before it and what facts it considered would be submissible to a jury in order. Isn't that just a fancy nuanced lot of words way of saying that you want us to review the factual determinations of the district court? No, Your Honor. It is a nuance, but that is not what I'm asking you to do. I'm asking you to review the legal determination by the district court that the allegations in the verified complaint prisoner complaint are enough to constitute a universe of facts to demonstrate the constitutional violation capable of overcoming qualified immunity. The district court did not conduct that analysis. In other words, are you conceding that if we answer that question in the negative, that that ends the case and you're not asking us to look beyond that pure legal determination at what the district court found? Your Honor. Because if you were appealing for the purpose of asking that pure question, then it seems to me that we just answer that question for you. And as I said, if we answer it in the negative, that's the end of the case. Your Honor. Excuse me. I hope that's clear because sometimes I ask a question and people ask me another question. So do you understand the question? To be honest, not exactly because I'm not sure. Let me ask the question as clearly as I can. If we rule against you on the pure legal question that you have just told me exists, is that the end of the case for you at this level? Your Honor, then it would need to go back to the district court for the district court to read. I understand. That's not this level. Yes. All right. So the answer is yes. That's a pure legal question. You ask us to rule. That is the legal question, Your Honor. Yes. All right. Because I was concerned, just so I can tell you my thinking, that what you were really doing is asking us to review the district court's factual determination and that that was our job here in addition to answer your legal question. Your Honor, whether there are enough facts in order to demonstrate a violation of a clearly established constitutional right, it's a two-pronged legal question. So, you know, that will involve looking at facts necessarily, but that is a legal question. But we look at the facts as found by the district court, not sit around here as an appellate court reweighing the factual determination. Correct, Your Honor. Let me ask you this. I commend you for your direct answers. Thank you. If there had been a declaration from a third party who happened to be there at the time that said he was sitting down and wasn't fighting back, the officer came up, let the dog loose, the dog attacked him, and then the officer hit him in the face with a chain and punched him. Would that be enough to defeat qualified immunity? It might, Your Honor. It might not. How could it possibly not? I mean, you have a third party affidavit, so you've got some evidence that's not coming from the victim, and you have a subdued prisoner who's being attacked by a dog and hit with a chain. Are you telling me that's not clearly established that you cannot hit a subdued prisoner with a chain and stick a dog on him? Your Honor, that would be going towards a constitutional violation. We don't have that in the record. Okay, so the only issue here is whether we have that in the record, which means the only issue here is whether we look at the verified complaint and treat it as a declaration. Your Honor, I would put a nuance on that. The only issue here is whether we look at the verified complaint with nothing further and consider that sufficient to overcome qualified immunity. Well, my hypothetical, there was nothing further. There was just the declaration of a witness. He said, I saw it happen. I mean, what more do you need? Nothing, Your Honor, but that's not what we're looking at here today. Well, you have a witness. You just don't like the witness. Your Honor, that witness is the plaintiff himself, and the case law is clear that he has to go beyond the record and point to specific facts beyond his allegations. And again, if we were to treat this verified prisoner complaint with the allegations that Mr. Vett put in this case, it would undermine and completely undo. It would be impossible for any person or any defendant to assert qualified immunity and succeed at the summary judgment stage. It would be impossible. I suppose it depends on what the allegations are. If he said I was fighting the officer and they released the dog and then subdued me during the scuffle, they hit me in the face, we'd look at it and say you're entitled to qualified immunity. Your Honor, I see my time is nearly expired here for this section. I would just like to conclude by saying the court should reverse the district court and grant summary judgment for Sergeant Sanders on the basis of qualified immunity. Because Mr. Vett has not demonstrated the violation of a clearly established constitutional right with his complaint allegations as he's required to do under the law. Thank you. Thank you, Counsel. And just to clarify, Mr. Harone, you set the clock at 15 minutes, did you not? I did, Judge. Your time is fully expired, Counsel. Thank you. We're ready to hear from your colleague here. Good morning, Your Honors. May it please the court, my name is Ashok Chandran and I'm here on behalf of the plaintiff, Appellee Eric Tyler. I think as Your Honor's questioning has made clear, this case, on this record as it exists, is really going to come down to credibility determinations that have to be made by a fact finder. And notwithstanding Sergeant Sanders' efforts to frame this as a legal dispute, I think this court's decision in Pauley v. White pretty squarely forecloses the argument that the universe of facts is a legal determination of the district court. What about the Thomas decision? Judge McHugh, do you mean Thompson v. Salt Lake County? I'm sorry, Thompson, not Thomas. Sure, I think Thompson v. Salt Lake County is not to the contrary, and I think it's the only case the defendants, the appellants really rely on here in support of jurisdiction. But the majority opinion there squarely notes that in resolving qualified immunity appeals, the district court must take the facts as the plaintiff alleges. And Judge Holmes' concurrence, I think, is simply making clear that when a defendant raises qualified immunity, the existence of disputed facts alone doesn't necessarily warrant the denial of summary judgment. Because if, even on the plaintiff's version of facts, there isn't a violation of clearly established federal law, then summary judgment may still be appropriate. But that's not what we have here. Sergeant Sanders, as I think Your Honor noted, doesn't dispute that if a jury believes Mr. Vett's account that Sergeant Sanders punched Mr. Vett, hit him in the face with a dog chain, and let the canine dog bite him all after the moment of his apprehension, there would have been a violation of the Fourth Amendment. Doesn't opposing counsel raise a good point? Every pro se prisoner complaint is verified just because of the form. So a petitioner can say, a prisoner can say any full thing they want in a complaint, and it becomes automatically evidence. Doesn't that sort of defeat the purpose of qualified immunity? That's a good question, but I'm glad Your Honor raised it because I think those concerns are vastly overblown for a number of reasons. First, I think existing rules already screen out privileged prisoner litigation in a number of ways, including through the PLRA and other procedural bars. But beyond that, I think it's important to look at the unique context of the record that we have here. Sergeant Sanders didn't move on a record like the record that existed in Jordan, which involved deposition testimony, full documents, and numerous witnesses. Sergeant Sanders moved for summary judgment based just on his own testimony. So there may be a case where, and I think this court's precedents are clear, that when a plaintiff relies purely on their own testimony in the face of overwhelming contrary evidence, that's not just the defendant's own testimony. It may not be sufficient to withstand summary judgment. They argue, I'm sorry, Sergeant Sanders also argues that the photographs are contrary, that if you look at those photographs, it can't be as he described, because when you look at the one where you can see half his face, he doesn't look like he's been hit in the face with a chain, and that the damage to his shoulder is not consistent with what he describes of the dog attack. Sure, Your Honor. So first I would note on this point that Sergeant Sanders has waived any argument of the photos blatantly contradicting Mr. Bette's account by not raising it at the district court and not raising it in his opening brief. But I think the argument is also wrong on the law. And that's because, sorry, I should say wrong on the facts. And that's because the photograph of Mr. Bette's face that Sergeant Sanders points to only shows, as Your Honor noted, half of his face. And in his response to posing summary judgment, Mr. Bette noted that it's the other half of his face that he was hit on. And Mr. Bette does actually point to other photographs that may exist of this bruising. Beyond that, I think the photographs of the shoulder injuries don't clearly contradict either account. And in fact, if you look at the Sergeant Sanders on page A56 of the record, which is his supplemental narrative, states that while the canine made contact with Mr. Bette, it didn't break any skin. But I'll direct Your Honor's attention to page A91, which is the second of three photographs that are submitted. And I think that photograph speaks for itself. And you can see that there are marks that could be consistent with the bite. And I think this is the fact that we're having this conversation is precisely why this needs to go to a fact finder, because those photographs I think are subject to reasonable dispute. A jury could look at them and say those two puncture wounds seem like their teeth. That sharp curve might be a jaw. I think it's just it's not the kind of record like in Thomas versus Durasanti or Carabajal or Scott versus Harris. And as Your Honor noted, I think in the previous argument, it's not a case like any other that this circuit has applied the blatant contradiction exception, because it's just really two testimonial accounts. So, counsel, do you do you agree that there could be a situation where testimonial accounts were so one sided that a pro se verified complaints could could be held to be not enough because it's blatantly contradicted by the record? Your Honor, I think that's that is a question that this circuit has never extended the blatant contradiction exception to. Is there a universe where that could happen, potentially, but I think it would be a pretty severe burden. And I think Rhodes versus Miller is instructive on this point there that involved one pro se prisoners verified complaint and then five officers who are all defendants who submitted affidavits denying that that happened. And even though there were five affidavits on one side and one on the other, this court declined to extend the blatant contradiction exception there. And I think there were five affidavits and and two of them were uninterested third parties. I think that gets closer to the line of blatant contradiction. But I still think at the end of the day, Your Honor, where the ultimate resolution of the case is going to turn on credibility determinations. It's likely inappropriate for a court to rule on that. But and I think that's why the Scott versus Harris exception is such a high burden and requires something that is truly incontrovertible, like a video, like a photograph. I think there's one case, maybe it's Carver Hall, where there was a photograph of a stoplight that showed clearly that the light spread when the plaintiff ran it. So I think it needs to be something truly incontrovertible, which witness testimony by definition is. Now, is there a case where, you know, if you have a hundred disinterested parties providing affidavits on one side and the plaintiff alone on the other side, that may be the case, but that's not this case. We just have really one in one. And I think there are reasons why a jury might believe Mr. But there are reasons why a jury might believe Sergeant Sanders. But at this stage on this interlocutory appeal, it's not the role of this court to second guess that. And I think just one additional point that I would make on the Jordan versus Federal Bureau of Prisons case that Sergeant Sanders relies heavily on here. I think that record is so vastly different than the one that we have here. That was a case involving a pro se prisoner who filed a verified complaint. And then over the course of discovery, when he sat for his own deposition, ended up contradicting several of his own allegations. And then the defendant officers were able to introduce documents showing that the reasons for the deprivations that the plaintiff alleged were all as a result of disciplinary violations or infractions of prison rules, which the plaintiff did not dispute. So on that kind of record, I think this goes to Judge Carson's point that declarations and testimony of the defendants plus official records can be enough to outweigh a plaintiff's own testimony. So I think for those reasons, it's pretty clear that this case should be dismissed for lack of jurisdiction. And the pure legal question of whether the verified complaint is properly treated as admissible evidence at this stage, I think the answer is squarely yes, as it seems like we all agree. And I'm happy to talk about the merits of the qualified immunity determination, though. Again, I think Sergeant Sanders doesn't really dispute that. If Mr. Betts' account is to be believed by a jury, there would have been a clear violation of Fourth Amendment law. And that's because I think starting in Perea versus Baca, which is an opinion authored by Judge Lucero, this court has recognized since at least 2011, it's been clearly established that any use of force on someone who's already been arrested violates the Fourth Amendment. And as recently as McCowan versus Murrell, as this court noted, that that doesn't depend on the existence of a prior case involving the specific type of unconstitutional force used. So long as the force takes place after the moment of apprehension, that's all that's needed to establish the violation of law. And that's sufficiently specific under this court's precedence. So the fact that Sergeant Sanders points out the absence of Tenth Circuit case law addressing the context of dog bites, I think is immaterial to this calculus. Well, those cases deal with using a dog to chase somebody down who's fleeing, not somebody who's already subdued, correct? That's correct. I think the cases that have allowed or denied or granted summary judgment to officers or granted qualified immunity to officers where dogs have been used have involved suspects who are actively resisting or actively fleeing, which, if Mr. Betts' account is credited here, which a jury could do, was just not the case. But I'd also put one further fashion on that, that even if this court does look for factually analogous situations involving punching, hitting, and using a canine on an already apprehended subject, I think there's really just no argument that as of December 31, 2017, a reasonable officer could have believed that the Constitution permitted them to do all this. And that's, I think, the Dixon v. Richard case, Caldwell v. Jones are just two of countless examples of this court's precedence, finding that punching and striking an already arrested person violates the Fourth Amendment. And although there's not a specific Tenth Circuit analog for situations involving dog bites, I think the Ninth and Eleventh Circuit decisions in Mendoza and Priester are instructive, and the unanimity of district court opinions that have applied Mendoza and Priester make it clear that I think it's beyond dispute that a reasonable officer could have thought that they were allowed to behave like this. And, you know, and all of that's persuasive and I agree with you, but I do think it makes it very easy for a petitioner or plaintiff to just put whatever they want in their pro se form to defeat qualified immunity. Your Honor, I understand the concern and qualified immunity, I think, will continue to operate as a shield, but I think it's important to remember the purpose of qualified immunity is to shield officers in unsettled legal landscapes, not where the facts of an interaction are disputed. If that were true and a dispute over fact could entitle an officer to qualified immunity, then I think every, essentially every officer would be entitled to qualified immunity in every 1983 case because the officer in almost every case is going to deny what the plaintiff alleges. And if that alone warrants summary judgment, even if there is clearly established law outlawing what the plaintiff alleges, then no officer is going to be liable for civil rights violations ever. And I think, again, given the numerous other, Sergeant Sanders had the option here to agree to Mr. Vett's facts, or to, in appealing to this court, agree with the district court's determinations that a reasonable juror could credit Mr. Vett's allegations. And if he had done that, he could have appropriately raised the question of qualified immunity on the facts as Mr. Vett alleged. And as we were just discussing, I don't believe that argument would be successful because I do think it is clearly established that what Sergeant Sanders allegedly did here was a clear violation of the Fourth Amendment. But he could have chose to invoke this court's jurisdiction properly by stipulating to the set of facts that the district court determined could be believed, or stipulating to the plaintiff's version of the facts. And he didn't either. And I think it's clear in this argument that he continues to dispute that a reasonable juror could believe Mr. Vett. But I think that under a well-settled precedent of this court is not a permissible exercise of this court's jurisdiction. Thank you. So, for those reasons, I think unless your honors have further questions, we'd submit that this appeal should be dismissed for a lack of jurisdiction. Thank you for ceding the remainder of your time. We find ourselves in a most unusual situation. A defendant actually ceding time. It's normally the government that does it. Thank you, counsel. We appreciate it. I don't believe there's any time remaining in your corner, Ms. Rowland. So the case is submitted. Counsel are excused.